# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| QUAD POWERLINE TECHNOLOGIES LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § § | Case No. 2:14-cv-1169-JRG-RSP |
| TRENDNET, INC., | § § § | |
| Defendant. | § § | |

## **MEMORANDUM ORDER**

Before the Court is Defendant TRENDnet, Inc.'s ("TRENDnet") Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (Dkt. No. 15). TRENDnet contends that this case should be transferred to the Central District of California, which it asserts is a clearly more convenient venue. Plaintiff Quad Powerline Technologies LLC ("QPT") opposes transfer. After considering the evidence and weighing the factors the Court finds that transfer is not warranted.

## **APPLICABLE LAW**

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2006). The first step in a Court's transfer analysis is deciding "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*").

If that threshold is met, the Court then analyzes public and private factors relating to the convenience of parties and witnesses and the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re*

*Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2009). The private factors are: 1) the relative ease of access to sources of proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing witnesses; and 4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319.

The public factors are: 1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; and 4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319.

The plaintiff's choice of venue is not a factor in this analysis. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314-15 (5th Cir. 2008) ("*In re Volkswagen II*"). Rather, the plaintiff's choice of venue contributes to the defendant's burden of proving that the transferee venue is "clearly more convenient" than the transferor venue. *In re Volkswagen II*, 545 F.3d at 315; *In re Nintendo*, 589 F.3d at 1200; *In re TS Tech*, 551 F.3d at 1319. Although the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen II*, 545 F.3d at 314-15.

Timely motions to transfer venue should be "should [be given] a top priority in the handling of [a case]," and "are to be decided based on 'the situation which existed when suit was instituted.'" *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003); *In re EMC Corp.*, Dkt. No. 2013-M142, 2013 WL 324154 (Fed. Cir. Jan. 29, 2013) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 443 (1960)).

## ANALYSIS

A.  **Proper Venue**

The Parties do not dispute that the Eastern District of Texas and the Central District of California are proper venues. Dkt. No. 15 at 3. *See generally* Dkt. No. 16.

B.  **Private Interest Factors**

   1.  **Relative Ease of Access to Sources of Proof**

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (citation omitted).

TRENDnet states "[t]he documents and exemplar of the accused products concerning the patents-in-suit are located at TRENDnet's headquarters in Torrance, Los Angeles County, California." Dkt. No. 15 at 5. TRENDnet also states "[t]he suppliers of the accused products are based in Taiwan with a United States office in San Jose, California." Dkt. No. 15 at 5.

QPT states that for the past four years it has maintained its documents in this District "at 1100 Judson Road, Suite 722 in Longview, Texas." Dkt. No. 16-1 ¶ 3. QPT also states that it "purchased U.S. Patent No. 8,157,581 (the "Patent-in-Suit") from Powerline Innovations, LLC ("Powerline")," Dkt. No. 16-1 ¶ 4, and "[p]ursuant to the Patent Purchase Agreement [] between QPT and Powerline, Powerline must provide documents. . . related to the Patent-in-Suit to QPT's office in Longview, Texas." Dkt. No. 16-1 ¶ 5. Powerline is located in Plano, Texas, also in this District. Dkt. No. 16-2 ¶ 2.

The Court finds this factor is neutral as to transfer. QPT has shown that it has specific documents in this District because Powerline must provide QPT with "documents, including

patent assignments, approvals, inventor documents, and any other instruments and documents related to the Patent-in-Suit to QPT's office in Longview, Texas." Dkt. No. 16-1 ¶ 5.

TRENDnet asserts that "Powerline has not provided any documents yet to Plaintiff," and that it "can only conclude that the documents are still in the possession of Tyler Brochstein, who is now in Houston within the Southern District of Texas." Dkt. No. 17 at 2 (citations omitted). The Court finds that these documents are in the Eastern District of Texas because Tyler Brochstein, the Manager of Powerline, has stated that "[he is] the Manger of Powerline Innovations LLC [] based in Plano, Texas, which **is located** in the Eastern District of Texas." Dkt. No. 16-2 ¶ 2 (emphasis added).

TRENDnet states that it has "exemplars" of the accused products in the Central District of California. QPT does not dispute this point. However, to the extent that TRENDnet suggests that its suppliers have relevant documents located in California, the evidence suggests that those documents are in Asia. The accused products were "manufactured and designed in Asia," Dkt. No. 15-1 ¶ 5, and the people with knowledge about the accused products are in Taiwan, Dkt. No. 17-1 ¶ 3. Because documents in Asia are equally inaccessible from both Marshall and Los Angeles, their marginal proximity to Los Angeles does not weigh significantly in favor of transfer.

2. **Cost of Attendance for Willing Witnesses**

TRENDnet claims that "[i]t is more than 1500 miles from Marshall, Texas, to anywhere within California, where TRENDnet (as well as the defendants in the 3 related cases), the inventor, and the supplier [are] located. If this case is not transferred, the California witnesses will have to fly to Marshall, Texas, as it is not feasible to drive there. If the supplier witnesses

are in Taiwan, they would have to travel an additional 1500 miles to this court versus Los Angeles." Dkt. No. 15 at 7 (citations omitted).

QPT claims that it is "located in EDTex and purchased the Patents-in-Suit from Powerline, which is also based in EDTex. As such, there are likely to be just as many, if not more, witnesses located in or just outside EDTex as there are in CDCal. Such witnesses would include Tyler Brochstein, the manager of Powerline. . . [and] QPT's Executive Vice President, General Counsel, and Registered Agent, Gregory Wright. . . ." Dkt. No. 16 at 10-11.

"The convenience of the witnesses is probably the single most important factor in a transfer analysis." *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009). While the Court must consider the convenience of both the party and non-party witnesses, it is the convenience of non-party witnesses that is the more important factor and is accorded greater weight in a transfer of venue analysis. *Aquatic Amusement Assoc., Ltd. v. Walt Disney World Co.*, 734 F. Supp. 54, 57 (N.D.N.Y. 1990); *see also* 15 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3851 (3d ed. 2012).

"A district court should assess the relevance and materiality of the information the witness may provide." *In re Genentech, Inc.*, 566 at 1343. However, there is no requirement that the movant identify "key witnesses," or show "that the potential witness has more than relevant and material information . . . ." *Id.* at 1343-44.

TRENDnet cannot seriously dispute that the Eastern District of Texas is more convenient for QPT's witnesses.[1] QPT cannot dispute that the Central District of California is more

---

[1] TRENDnet does not admit that Marshall is more convenient for QPT's witnesses because the "President of Plaintiff is Mark Baerwaldt, who appears to live in Seattle, Washington." Dkt. No. 15 at 6. The Court rejects this argument. There is no showing that Mr. Baerwaldt is a likely witness, but moving the trial to Los Angeles would still require him to travel a significant distance to attend trial.

convenient for TRENDnet's witnesses. The only issue that remains is whether Marshall or Los Angeles is more convenient for the third-party witnesses.

Mr. Brochstein is the Manager of Powerline, and according to QPT, a relevant witness in this case. Mr. Brochstein lives in Houston, and TRENDnet cannot dispute that attending trial in Marshall would be more convenient for Mr. Brochstein than attending trial in Los Angeles. Dkt. No. 16-2 ¶ 3. TRENDnet, however, suggests that while it is more convenient for Mr. Brochstein to attend trial in Marshall, that convenience is outweighed by the convenience to the inventor and to TRENDnet's suppliers of attending trial in Los Angeles.

The Court gives less weight to the convenience of the inventor because TRENDnet has offered no persuasive evidence as to his location. The website TRENDnet relies on shows that the inventor lived in San Francisco when this suit was filed, but other information on the website raises questions as to its credibility. Dkt. No. 15-3 at 29. For example, the website shows that in March 2008, the inventor simultaneously lived in San Francisco, San Diego, and Wakefield, Massachusetts. Dkt. No. 15-3 at 29.

The Court also gives minimal weight to the convenience of the witnesses from TRENDnet's supplier because the only evidence shows that those witnesses are based in Taiwan. Dkt. No. 17-1 ¶ 3. As the Federal Circuit held in *Genentech*, when a witness "will be travelling a great distance no matter which venue the case is tried in [] [the witness] will be only slightly more inconvenienced by the case being tried in California than in Texas." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009).

In sum, the Court finds this factor weighs against transfer because there is concrete evidence that Mr. Brochstein will find a trial in Marshall more convenient. Conversely there is only speculative evidence that the inventor will find a trial in Los Angeles more convenient, and

TRENDnet's suppliers are based in Taiwan which is inconvenient from both Marshall and Los Angeles.

### 3. Availability of Compulsory Process to Secure the Attendance of Witnesses

Rule 45 provides that this Court may command a person who "resides, is employed, or regularly transacts business in person" in Texas to attend trial in Marshall if that person "would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(B). This Court also may command a person to attend a deposition "with 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45 (a)(2); *see id.* (c)(1)(A), (d)(3)(a). Party witnesses do not require compulsory process, and the Court's analysis of this factor focuses on third-party witnesses for whom compulsory process to attend trial might be necessary.

This factor weighs against transfer. The Eastern District of Texas has subpoena power over Mr. Brochstein for trial. The Central District of California may not have subpoena power over any third-party witnesses. There is no persuasive evidence as to the location of the inventor, and neither this District nor the Central District of California has subpoena power over the supplier's witnesses in Taiwan.

On this matter, the Court rejects TRENDnet's claim that the Central District of California has "absolute subpoena power over the representatives of the supplier." Dkt. No. 15 at 4. The evidence shows that the supplier is based in San Jose, California, which is outside the 100 mile radius of the Central District of California.[2] Fed. R. Civ. P. 45(c)(1)(A).

To the extent the supplier's witnesses "regularly transact[] business in person" in San Jose, California, the Central District of California can only "command [those witnesses] to attend a trial" if the witnesses "would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(B). The

---

[2] There are two courthouses in the Western Division of the Central District of California which covers Los Angeles County. Both courthouses are more than 100 miles from San Jose.

undisputed evidence shows that the supplier's witnesses are based in Taiwan, Dkt. No. 17-1 ¶ 3, and TRENDnet has no evidence that shows they would not "incur substantial expense" if required to travel to Los Angeles for trial.

### 4. All Other Practical Problems that Make Trial of a Case Easy, Expeditious, and Inexpensive

The Court finds that judicial economy weighs against transfer because there is least one other case that will remain here involving the same patents where no venue issue exists. *See, e.g.*, *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013) ("The district court could properly consider the benefits to judicial economy arising from having the same judge handle both Oasis' suits against the petitioners and Oasis' suits against other parties involving the same patents and technology as to which there was no issue of transfer.").

## C. Public Interest Factors

### 1. Administrative Difficulties Flowing From Court Congestion

The Court finds this factor weighs slightly in favor of transfer. The Central District of California has an average time-to-trial of about three months faster than the Eastern District of Texas.

### 2. Local Interest in Having Localized Interests Decided at Home

The Court finds this factor weighs against transfer because QPT has evidence of its local interest in this District. QPT states that it has been in this District since 2011, and Mr. Wright, QPT's Executive Vice President, General Counsel, and Registered Agent, has lived here for forty-eight years. Dkt. No. 16-1 ¶ 2.

As part of his duties, Mr. Wright "review[s] and analyze[s] correspondence regarding QPT's ongoing business and provide[s] legal advice regarding corporate governance." Dkt. No. 16-1 ¶ 6. Mr. Wright also "review[s] and execute[s] instruments, such as engagement

agreements and settlement agreements, on behalf of QPT and participate[s] in periodic management conference calls relating to licensing and all matters of corporate governance." Dkt. No. 16-1 ¶ 6.

TRENDnet, conversely, provides minimal evidence of its business activities in California because it only states that it has offices in California, and that it "sells the accused products in all parts of the United States, including the Central District of California." Dkt. No. 15 at 5. *Cf. In re Volkswagen II*, 545 F.3d at 318 (holding that the availability of a product in a district does not demonstrate local interest). TRENDnet's evidence instead shows its connections to Asia, and indeed, suggests that the business activities relevant to infringement occur overseas. The accused devices are "manufactured and designed in Asia" and "supplied to TRENDnet by Taiwanese companies." Dkt. No. 15-1 ¶ 5; *see also* Dkt. No. 15 at 2 ("The accused products were imported from Asia.").

### 3. Familiarity of the Forum With the Law that Will Govern the Case and Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law

The Parties do not dispute that these two factors are neutral as to transfer. Dkt. No. 15 at 8; Dkt. No. 18 at 4.

## CONCLUSION

A motion to transfer venue should only be granted if the moving party can show that the transferee venue is "clearly more convenient" than the transferor venue. *In re Nintendo Co.*, 589 F.3d at 1197; *In re Genentech, Inc.*, 566 F.3d at 1342 (Fed. Cir. 2009). After weighing the evidence as a whole, the Court finds that this case should remain in the Eastern District of Texas because TRENDnet has not shown that the Central District of California would be "clearly more

convenient." TRENDnet, Inc.'s Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (Dkt. No. 15) is **DENIED**.

**SIGNED this 17th day of August, 2015.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE